Good morning, Honors. Good morning. My name is Amsar Ahmad and I'm representing Rashid Khan on behalf of the Petitioner. I'd like to request five minutes rebuttal time. That's the facts play into some of the arguments that we've raised in the matter of Rashid Khan. Mr. Khan, originally from the country of Pakistan, was born in 1959. He traveled to the US in 2001, at which point he was taken in custody and put in removal proceedings. At the time he was put in holding of asylum based on the fact that he was in fear of returning to his country. One of the issues that he raised was that he was a member of the PPP, the Pakistan Political Party, and he had been persecuted by the Pakistan Muslim League. He had also indicated that he had been beaten up by the PPP. The dates here are significant because they relate to the fact that at the time of his hearing in front of the immigration judge, almost seven to 10 years had elapsed. Some of the issues that the judge had raised pertained to his recollection of specific dates, not only months, but the actual dates of some of the beatings that occurred. He frankly, during his hearing in front of the immigration judge, indicated that he didn't recall. He wasn't going to make up a date, but he did the best that he could. He just couldn't recall those dates. Mr. Ahmad, there is a report in the appendix, a psychological report, at page 233 of the appendix. I came upon it by virtue of going through the appendix, but it wasn't referenced either in proceedings before the immigration judge, I believe, nor in the brief to us, to our court. And yet it talks about Mr. Khan and his situation and his post-traumatic stress disorder, the fact that he wasn't a torture victim, the fact that he is not a malingerer. It said this is an honest man with a simple claim. It says it is likely that he will decompensate, etc., etc. Why was this not referenced either in the hearing or in the briefing to our court? It seems to me to present a very good explanation as to why he may mentally not be 100% in terms of the ability to remember Yes, it was submitted below, Your Honor. This is part of the record that we received from counsel who handled that hearing. Unfortunately, I don't believe counsel raised this document. It was included as part of the... It was in the record. In the record, it was. Given that, we do believe there was some ineffectiveness. We didn't know the extent of how that would play out. I don't think it was raised at the BIA level either, and that's why at the Third Circuit level, we were limited to what was raised at the BIA, and that's why it sort of got overlooked. Well, on that point, you do seem to make reference in the briefing to IJ stepping out in a proper role, but the government in response says in footnote 2 of their brief that that was not addressed or raised below in any fashion. What's your response to that? Your Honor, we did address the issue of the improper conduct of the IJ. I believe in the BIA's decision, they had dismissed the issue of the petitioner not being credible. We do believe that that's where the concern about the judge stepping out of line as far as the way he handled this hearing was properly addressed. Well, take me back to the record where you said the BIA, the IJ, he became a prosecutor instead of judge, in effect. Your Honor, in our brief, page 17 of our brief, we indicate, I think, second paragraph, Petitioner believed that the immigration judge's findings of his testimony was incredible or unreasonable given the length of time that it had elapsed, and nervousness of the petitioner when providing the testimony, and the immigration judge's demeanor in questioning the petitioner. Right. And I guess what I'm asking, I just may not have made it clear, is where is it in the record that you raised that to the BIA? I believe it was raised in the brief to the BIA. I think it was raised in the sense that, I don't believe the specific issue of the judge's demeanor was raised itself, but the fact that the judge found him incredible was raised. And I think the illusion there was that the reason that he was found incredible was not just the minor inconsistencies, which were only minor, but the fact that there was errors made by the judge in the way he handled the hearing. And if it wasn't raised below, what does that mean for our ability to review that issue now? Well, I do believe that within the realm of a judge finding credibility, this court can look at what criteria the judge used. The fact that he constantly was interfering in the direct examination by the trial attorney. If we look at the appendix, anywhere from pages, and I have them marked, 254 on, during direct testimony, as soon as direct testimony starts, every other sentence of trial counsel, the judge interfered and said, well, let me interject. And then asking for very specific dates, asking, well, you know, why don't you remember this? I would remember this if I was in your situation. And this was during direct testimony. It's not at the end of the hearing when the judge has a chance to ask the questions that he would normally ask. But when Mr. Felix and trial counsel begins the hearing, throughout the entire direct testimony, question after question, and the judge is interfering and almost cross-examining the witness, who obviously has had a long history. And if his story pans out, has a legitimate fear of returning back to his country. Not to mention the psychological report that seems to be pretty relevant, which unfortunately wasn't brought up during the proceedings. I mean, we don't even know if the immigration judge looked at the psychological report or any of the letters for that matter. There's no discussion of the record at all. Right, Your Honor. One of the problems I've seen in the set of cases, and this is actually going beyond this individual case, there were several individuals who were from this part of the country of Pakistan called Swat who were testified, who had individual cases before the same judge. And I think what happened was these cases were just rubber-stamped dismissal after one dismissal after another. Although that's not before us, is it? That's not before you, Your Honor. But as far as this same attorney handling the cases, he may have overlooked it. Again, that issue wasn't raised and it wasn't raised at the BIA level. But I do believe, in fairness to Mr. Khan, the fact that the record is there and it was admitted as a record, the government counsel did not oppose the psychological report. We do believe that this court has the jurisdiction to review it at this time and make some assessment of its credibility. The final issue that... Counsel, let me ask a question about the IJ's role. What if the IJ had waited until the end of the direct examination and he asked the same series of questions to your client? Could that have been a problem? We do believe that, given the client's foreign language and his amount of length of time that had expired between the events and the day of the hearing, seven to ten years, that he would have had time to reflect. When your own lawyer is asking these questions, it's easier to remember one after another. And the lawyer can somewhat help during direct examination. But if every other question the lawyer is asking interferences coming from the judge, who's the adjudicator here, I do believe it makes a difference as far as clarity of thinking, being able to recall dates. And he just wasn't given that opportunity if we look at the transcript itself, Your Honor. If he had waited until the direct examination was concluded. If he had waited until the direct examination was concluded. Some of the questions were, we believe, quite biased in the manner that he was asking them. You know, why don't you remember this? I would remember this in your situation. So it became almost personal. And we do believe that that played a factor in Mr. Kahn being able to even conduct a direct testimony. If immediately when he starts, the judge is giving an impression that he's not believable, it's not as if the judge has listened to the entire testimony and then afterwards reflected upon it and made a decision. Although the BIA specifically found against you on that. In other words, the BIA says, we note he argues the IJ questioning was improper and went outside his role, etc. The BIA specifically thought that the question did not exceed judicial bounds. We do. That's one of the issues we're appealing, Your Honor. We do believe that the BIA erred in that decision. Does the immigration judge have the duty to discuss the record and to examine and look at everything in the record and comment on it as an affirmative duty, even if counsel doesn't argue it? Yes. In immigration proceedings, the judge can look at any document that's in the file and comment on it, regardless of whether either side has raised it as an issue. I know in the beginning of these immigration proceedings, every document is indicated, whether both parties would agree or not agree to its admission in hearing. If there was a dispute, it would have been brought up. Certainly, the judge saw this document. He had to admit it specifically before allowing it to be entered as an exhibit. Thank you, Your Honor. All right. We'll hear from you on the phone. May it please the Court, Ada Bosco on behalf of the United States. If you'll allow me, I guess I'll start with a couple of questions that you asked counsel. The psychological report was a report that was submitted before the asylum proceedings in Canada. So, neither the IJ nor the Board discussed the report that was submitted before the Canadian authorities. And again, I'm not sure if it's clear from the record, the Canadian authorities did not grant asylum, which is why there were asylum proceedings here in the United States. I would also like to point out that the decision that's at issue before this Court is the Board's decision, not necessarily the immigration judge's decision. Doesn't that have to impact what we're doing here, though? I mean, a big chunk of what your opponent is talking about here is the immigration judge's behavior. And a judge who, you know, say right up front is not a... Not a judge anymore. Yeah, not a judge anymore, not somebody whose behavior has passed without notice or comment in the past. So, are we really to just look at the BIA and ignore the way the immigration judge behaved here? I would answer the Court in two ways, if I may. First, some of the arguments, as the Court has already sort of hinted, that counsel is making today, and it's briefed to the Court, were not made to the BIA, were not made to the Board. However, or I guess in addition to that, the Board's decision is a reasoned decision. It went through the testimony, it went through the record, and it found that Mr. Kahn's story was too full of inconsistencies. So they couldn't discern what, if anything, had happened to Mr. Kahn. And it is, again, that decision that is before this Court. Nobody looked at the documents, did they? Well, we would disagree with that. The Board itself says that it has reviewed the record and concluded, given the number of inconsistencies in Mr. Kahn's testimony, and I'd like to discuss those in a bit, that those inconsistencies were simply overwhelming. But weren't those inconsistencies all about dates? No, no. All right, what was there that wasn't about dates? You were ready for that question. I was ready for that question, because that is one of the arguments that Mr. Kahn has raised. It's really, he couldn't remember what happened seven years ago. And that argument is premised on the idea that it's simply inconsistencies in dates that overwhelms his credibility. Mr. Kahn's testimony was, let me begin by saying, internally inconsistent, inconsistent with his affidavit, and inconsistent with the documents that he submitted. So to sort of go back a little bit to Ayanna's question, they did talk about the documents because the testimony was inconsistent with the documents that he submitted. But I'm looking at pages four and five of the appendix of the BIA's reasoning, and it's all about dates. He said this was then, then he said this was then, and then the affidavit says this was then, and then this happened a different time from what he said. Tell me what, other than dates, was problematic. Sorry, sure. Mr. Kahn's claim of past persecution was based on two series of events. One was the alleged arrest, and there, an inconsistency that does not at all relate to dates. In his direct examination, Mr. Kahn testified that he appeared before the court and the charges against him were dismissed. Then on cross-examination, he said, no, no, no, the charges were not dismissed, they're still pending. And his response when he presented with that inconsistency was, oh, I must have misunderstood the question. But if the court looks at the question that was asked, it was almost verbatim, did the judge dismiss the case? Let me ask you, though, counsel, when you say they did look at the documents and they're, here's what's troubling me. The immigration judge gets after this fellow, and we could go ahead and read it, but I'm sure you have, fairly aggressively about these date inconsistencies. But I don't see any discussion about an arrest warrant, a copy of which is in there. I don't see any discussion about letters purportedly from his lawyer who say, if you come back here, you're going to get arrested and you're in serious trouble. I don't see any discussion there about correspondence from family. Now, maybe family letters aren't really that significant, but they seem to go along with what the arrest warrant and the letter from the lawyers talk about. I don't see any discussion about any of these documents that seem to be very pertinent to this fellow's claim, and at least corroborative in part. All I see is the immigration judge saying, wait, you said November. How could it be November? It's really October. Are we really in a position where a documentary record that's attempted to be put in is something we're not going to look at because the BIA said, oh, the credibility judgment was okay? And if that is your position, how does that square up with, I don't even know if I can pronounce this case name, Sukhwamputra, where this same judge was taken to task for ignoring an evidentiary record and going after dates as a credibility issue? My response has multiple parts, so if the court will beg some indulgence. First, again, it is the board's decision that is at issue before the court, and the board reviewed the record, including the transcript, and found that Mr. Khan had not credibly established a claim for withholding of removal. The documents were discussed. The warrant specifically was one of the issues that was discussed during the hearing because Mr. Khan's testimony was inconsistent with what the warrant said, as well as the number of documents that sort of relate back to that warrant, the investigative report, and there's another document that I think maybe precedes the warrant. But as I indicated earlier, those documents are inconsistent with Mr. Khan's testimony. The warrant is not because Mr. Khan was starting out of high school or had donated land, or because he had spoken out against Islam. The document itself relates to some discussion of an opposing political party, and the other documents suggest that Mr. Khan may have absconded, and that's what the documents show, and all of those documents are inconsistent. Would you be specific as to where in the appendix you're looking? I can't think. And where in the BIA decision there's something for us to be able to look at to say, yeah, they actually did give a review of these documents, other than a generalized statement that we looked at the records. Is there anything that indicates to us that these specific documents were considered? Yes. In the board's decision, the board notes a different inconsistency that is based on the documents, and that is Mr. Khan testified that the second event that Mr. Khan testified about was this alleged beating that related either to his donating some land to a high school or to his speaking out against Islam. In his affidavit, Mr. Khan had attested that he was attacked a month after the incident at the high school, and during his oral testimony he testified that it occurred the same day. Those are the kinds of things that the board noted in finding that Mr. Khan's responses were simply not credible because they were internally inconsistent and inconsistent with the affidavit. There is a medical certificate that was not discussed, correct? Correct, Your Honor. And the same things that the IJ was talking about is what the board was talking about, right? Yes, the board highlighted certain examples that do not simply relate to the date, that related to his inability to testify, act consistently about whether there are main charges pending or what prompted the second beating, if there was a second beating, and what he did following that event. So the board highlighted some of the inconsistencies and found that Mr. Khan's testimony was, as I said, internally inconsistent and inconsistent with the affidavit and the documents that he submitted in support of that. The court will give me one second. I can reach into my bag and get the documents that we discussed because I don't have them right here and they don't seem to be in the file.  The administrative record site for the documents, the affidavit is the administrative record site 308 through 310. And then the first investigative report is at administrative record page 280. And then there is another first investigative report and that's administrative record 283. And then the arrest warrant is at administrative record 276. And then there is the proclamation that Mr. Khan escaped from the crime scene is at administrative record 278. And those are the documents that the immigration judge, or at least that came up, I should say, during his testimony. I don't recall specifically whether it was on cross-examination or his direct testimony. But they were discussed. It's not like they ignored the documents that Mr. Khan submitted with his affidavit. I wanted also to add that when Mr. Khan was arguing before the board, he identified two things that he found or that he alleged the immigration judge did improperly. And one of those was that he, according to Mr. Khan, the immigration judge had considered the Canadians' denial of asylum improperly. And the second thing that Mr. Khan raised was the follow-up questions that related to whether Mr. Khan could recall when he was arrested. So those are the two instances that Mr. Khan raised to the board. And those are the two instances that the board reviewed. And as the board's decision explains, those instances do not amount to the type of situation that this court has looked at before with regard to this particular immigration judge. Did the board have an obligation, particularly in light of the history, although that history may not have been explicated in decisions by this court at that juncture, to do something to inquire about the IJ's demeanor and actions at the hearing based on the argument that the credibility determination was, in effect, nitpicking? Maybe I'm reading too much into your opponent's argument. But I hear them saying, hey, you should review that piece of this case because the credibility judgment and the way it was made raises implicitly the way the IJ went about it. What's your response to that? We don't believe it would raise implicitly. It's raised implicitly. I mean, Mr. Khan made two specific arguments to the board, and the board addressed those specific arguments. With regard to credibility, the board went wholesale. It reviewed the record. It reviewed the transcript and found that the inconsistencies as to what happened, when things happened, and why things happened were just overwhelming. And it could not find that Mr. Khan, who bore the burden of proof, had provided credible evidence of past persecution. And so it denied that part of the appeal and granted the remainder part of the appeal that dealt with the frivolousness of his application for relief. One of the issues regarding the dates, and I'll sum up quickly after this, dealt with when he was arrested. And this court has previously thought in Z that if you're only arrested once, it's a pretty significant event. And one can generally recall when something like that has happened, at least relative to other things. Well, I think he did know the month. You know, and when somebody in a different language says, you know, when did something, you know, on what date did this occur, you know, I might not remember the date, but I'll know generally when it was. I just did not think Ferlise's assumption that, well, if I were arrested, I would remember, I don't think that's universally true, is it? Well, again, I would say the question, the way the court just phrased it is exactly what Judge Ferlise said. He didn't ask Mr. Khan for a specific date. He asked Mr. Khan, do you remember the year? And Mr. Khan's response was actually incorrect. He responded that he was arrested in 1997. And then, in follow-up, he asked him, do you remember the month? And Mr. Khan, again, responded incorrectly, in October. Well, let me just say, the one thing that bothered me was, reading the psychiatric report, I found an explanation for exactly why this man's head was, I mean, he actually testified, my mind isn't right. Well, guess what? That psychologist's report says his mind isn't right. And that would have provided an explanation that would seem to me at least has to be referenced. And you can respond to that. Thank you. That, again, that report was submitted to the Canadian authorities, and they denied him asylum. But that's not collateral establishment, res judicata, or anything else. If it's part of the record here, it ought to be considered, shouldn't it? It would be one thing if it were sitting in Canada and never submitted, but if it's part of the record here, it's something that ought to be discussed, shouldn't it? Well, you know, what the board did, and I, frankly, I don't see an administrative record site on the psychological report, but I don't have the rest of the record before me. But what I can say is that the board reviewed the record as a whole. And as a whole, it found that Mr. Khan's testimony simply overwhelmed the documents that he submitted, in fact, conflicted with the documents that he submitted in support of his asylum application. So for those reasons and the reasons we set forth in our brief, we ask that the court affirm the decision of the board. Thank you. Thank you. Rebuttal? Your Honor, one or two brief points that I think are important to mention. Reference was made several times to this being a Canadian report, and it wasn't provided to the court. In the appendix, page 78, it's actually a letter from trial counsel here to Judge Dominic Relief indicating that I'm attaching the exhibits in the witness list. The next page is the documents which are in this list, and the witness list, V, is the medical certificate and psychological assessment. So the judge had this. It was submitted. It was submitted on September 9, 2004. And anywhere between pages 78 to 243, this would be some of the documents that were part of the record. So this was presented to the judge. He had access to it, and it was presented in a timely manner. As Your Honor pointed out, this is not something that was sitting in Canada and just was slipped in here as a last-ditch effort or something. The other point that I would like to mention, and I do believe Judge Jordan has raised this a couple times, is where the BIA, do they address the issue of the impropriety of the immigration judge? And I do turn your attention to the second page of the BIA decision. They say, we note that on appeal, you argue that the immigration judge's questions of him regarding the date and time was improper. BIA goes on to say, however, having reviewed the transcript and the specific example cited, we do not find the immigration judge's questioning exceeded judicial bounds. We believe that he did exceed judicial bounds, and that's the issue that we're appealing. In the case of Abdul Rahman, and I believe this was cited in our brief, it says, This Honorable Court, Third Circuit, found that a judicial officer immigration judge has the responsibility to function as a neutral, impartial arbiter and must assiduously refrain from becoming an advocate for either party. We believe this is exactly the opposite of what happened in this case, Your Honor. Can I ask a question real quick? Yeah. You heard your opposing counsel say that this wasn't just a date confusion matter. And to the discussion about whether charges were pending or not pending, as an example of an inconsistency that wasn't date-based, and this severely undermines your client's credibility, what's your response to that? Again, Your Honors, there was numerous documents that were provided, including affidavits and the warrant that Your Honor has mentioned. From my recollection of the transcript, the question that was asked was, you know, are there charges pending? And he indicated that, to the best of his knowledge, he wasn't sure whether there were or there weren't. Now, in that situation, a person who's been out of the country for X number of years, doesn't know if there's charges in the dismiss, or they're still pending or not pending, has very little resources to be able to find out. I don't believe it's proper to hold that as an inconsistency if he just doesn't know, one way or another, the status of a warrant from seven, eight years ago. What about his age? Is it too much to ask that he know his age? Didn't he testify he was 40 years old? I'm not sure what happened there. I certainly do believe he should know his age. I mean, I don't know if that was a translation problem or an inconsistency, but that's the kind of inconsistency that certainly anyone would know. There's no reason to hide it or get that wrong. The affidavit says he was born in 59 and he testified at the hearing he was 40. The affidavit says he was a seaman for 20 years, and at the hearing he says he was a seaman for five. I can certainly understand why someone might not remember the exact date of their arrest, but saying you've been a mariner or a seaman for 20 years in a sworn affidavit and then testifying under oath at a hearing that you have been for five years, that's a pretty serious discrepancy, and there are others of that ilk, are there not? There were a few discrepancies, Your Honor. Again, we do believe that those were not the issues that Judge Felice specifically addressed, and we raised the issues that were addressed with BIA, which specifically pertain to dates, but we do believe there were some inconsistencies there. But again, the question is to what extent did they play a role in Judge Felice's decision? He focused more on the dates, how he was off one day or another. He said he was beaten as a result of an event that occurred after the time he was beaten, and that's a logical impossibility. So isn't it possible that the judge was scratching his head saying, well, every third thing that comes out of your mouth, sir, is making no sense to me, and isn't it incumbent upon the trier of fact to inquire as to what could possibly explain these serious discrepancies? I do believe that's correct, Your Honor. Had the judge and both counsels taken a look at his mental assessment, which was also part of the record, that may have explained some of these inconsistencies. I do believe that was overlooked. I don't know why Judge Felice, with the help of trial counsel, didn't approach that, but that may explain why he had some trouble as far as why these dates were off. But I do believe that psychological profile was accurate and it was not looked at also to the disadvantage of Mr. Conway. Thank you, Your Honor. All right, thank you, counsel. We'll take the matter under advisement. The case is well argued. Call our next case, Conway Transportation Services, Ink v. Riggsgan.